IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| VERONICA HALL, | ) | CASE NO. 1:12-cv-01764 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION,[1] | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) | |

Plaintiff Veronica Hall ("Plaintiff" or "Hall") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for social security disability benefits.  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the undersigned Magistrate Judge pursuant to the consent of the parties. Doc. 12.

As set forth below, the Administrative Law Judge ("ALJ") failed to reflect, in his Residual Functional Capacity ("RFC") determination and hypothetical question to the Vocational Expert ("VE"), limitations in concentration, persistence, or pace that the ALJ himself found Hall to have.  See *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).  Accordingly, for the reasons stated below, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013.  Pursuant to FED. R. CIV. P. 25(d), she is hereby substituted for Michael J. Astrue as the Defendant in this case.

1

## I. Procedural History

Hall filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on or about May 22, 2008.[2] Tr. 55-58, 139-43, 144-50. Hall alleged disability beginning on April 1, 2006. Tr. 139, 144. She claimed disability based on arthritis, back pain, left hand problems, right elbow problems, and alcohol and drug addiction. Tr. 65, 68, 75, 78, 158. After initial denial by the state agency (Tr. 65-67, 68-71), and denial upon reconsideration (Tr. 75-77, 78-80), Hall requested a hearing (Tr. 81-83). On August 18, 2010, Administrative Law Judge Paul Johnson ("ALJ") conducted an administrative hearing. Tr. 24-52.

In a September 24, 2010, decision (Tr. 7-23), the ALJ determined that Hall had not been under a disability from April 1, 2006, through the date of the decision. Tr. 19. Hall requested review of the ALJ's decision by the Appeals Council. Tr. 6. On June 2, 2012, the Appeals Council denied Hall's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5.

## II. Evidence

### A. Personal and Vocational Evidence

Hall was born on November 26, 1962, and was 47 years old at the time of the hearing. Tr. 28, 139, 144. She completed the ninth grade and started but did not finish the tenth grade. Tr. 31. At the time of the hearing, Hall lived alone in an apartment (Tr. 30) and she had not worked since about the end of 2005 (Tr. 31-32). Her past work included running a home daycare

---

[2] Hall also filed applications for DIB and SSI earlier, in May of 2007. Tr. 121-33, 134-38. Those applications were denied on July 24, 2007. Tr. 59-61, 62-64. Only the 2008 applications are at issue in this case. Tr. 10.

for about five years. Tr. 32. As a home daycare provider, Hall provided various services for children under her care, including meal preparation and educational training.[3] Tr. 32. Prior to running a home daycare, Hall worked for approximately seven years as a State Tested Nursing Assistant ("STNA") in a nursing home. Tr. 32-33. As an STNA, Hall helped elderly patients with their daily living activities, which in some instances required a lot of lifting. Tr. 33.

B.  Medical opinion evidence

    1.  Treating physician's opinion

On March 1, 2010, Dr. Angel A. Brown, D.O., provided a report regarding Plaintiff's medical condition. Tr. 417-18. In the report, Dr. Brown indicated that Hall had the following diagnoses: empty sella,[4] NPH (normal pressure hydrocephalus)[5]; anemia; a history of depression; and chronic low back pain. Tr. 417. Dr. Brown indicated that her prognosis was "fair" and noted that she was "medication dependent."[6] Tr. 417. He noted some physical and mental limitations or restrictions.[7] Tr. 417. He recommended that Hall seek pain management treatment and find a regular endocrinologist. Tr. 417.

---

[3] At one time, she cared for a child with special needs. Tr. 32.

[4] "Empty sella" is "a syndrome diagnosed radiologically in which the diaphragm sellae is vestigial and enlarged sella turcica forms an extension of the subarachnoid space and is filled with cerebrospinal fluid. The pituitary fossa appears empty, although the pituitary gland is present in a flattened form; pituitary hormone secretion may be normal, deficient, or excessive. Sometimes there is downward herniation of the optic chiasm, which lead to defects in the visual fields" See Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 1854.

[5] With normal pressure hydrocephalus, "[t]he cerebrospinal fluid pressures are at the upper end of normal, but with the excess spinal fluid volume, that pressure is actually abnormally high." See Dorland's Illustrated Medical Dictionary, 31st Edition, 2007, at 890.

[6] Dr. Brown included a second note regarding Hall's prognosis but that note is not legible. Tr. 417.

[7] Dr. Hall indicated that Hall was depressed and had some emotional and situational fragility. Tr. 417. He also noted that Hall was limited physically. Tr. 417. However, his notes with respect to physical limitations are not entirely legible. Tr. 417.

3

In the "work activity recommendations" portion of Dr. Brown's opinion, he opined that Hall's prognosis was fair; she could be released to work part-time for four to six hours per day; she was capable of light work, meaning occasional standing, walking, bending and lifting up to 20 pounds; she could stand less than one hour in an eight-hour workday; she could sit less than four hours in an eight-hour workday; she could lift occasionally; and she would require slow pace work, frequent breaks and good communication regarding activities/duties to be performed. Tr.  418.

2. **State agency psychological opinions**

a. **State agency psychological reviewing physician's opinion**

On July 24, 2008, state agency reviewing physician Dr. Frank Orosz, Ph.D., completed a Mental RFC Assessment (Tr. 301-04) and a Psychiatric Review Technique (Tr. 287-300).

In the Psychiatric Review Technique, Dr. Orosz rated Hall's functional limitations under the "B" criteria of the Listings as follows: no limitations in her activities of daily living; mild limitations in her ability to maintain concentration, persistence or pace; moderate limitations in her ability to maintain social functioning; and no episodes of decompensation.  Tr. 297.

The Mental RFC contains three sections: (1) Section I - Summary Conclusions; (2) Section II - Remarks;[8] and (3) Section III - Functional Capacity Assessment.  Tr. 301-03.  In the "Summary Conclusions" section, Dr. Orosz rated Hall in 20 categories.  Tr. 301-02.  Dr. Orosz rated Hall as "not significantly" limited in 14 of the 20 rated categories.  Tr. 301-02.  He rated Hall as "moderately" limited in the other 6 categories, including: (1) ability to understand and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to maintain concentration for extended period; (4) ability to complete a normal workday and

---

[8] In the event that a category is "not ratable on the available evidence," in Section II, a physician is asked to explain what additional documentation is required. Tr. 302.  Here, Dr. Orosz did not indicate that a category was not ratable.

4

workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (5) ability to accept instructions and respond appropriately to criticism from supervisors; and (6) ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Tr. 301-02.  In the "Functional Capacity Assessment" section, Dr. Orosz opined that "[b]ased on the evidence in the file, it appears that the claimant is capable of performing simple one and two step tasks where close interaction with coworkers is not required."  Tr. 303.

### b. State agency psychological consultative examining physician's opinion

On July 8, 2008, Dr. Sally Felker, Ph.D., conducted a psychological examination.  Tr. 283-86.  Hall reported that the pain in her back, knees, right arm, and ankles is severe.  Tr. 283.  She reported that the most severe pain was in her left ankle.  Tr. 283.  During the day she reads the bible, says prayers, might attend an AA meeting or Bible Study, goes shopping at nearby stores, does household chores, and spends time with her grandchildren and daughter.  Tr. 285.

Dr. Felker diagnosed Hall with "a primary diagnosis of Chronic Pain Disorder associated with psych factors and a medical condition."  Tr. 285, 286.  Dr. Felker also diagnosed Hall with "Mixed Substance Abuse."[9]  Tr. 285, 286.  Dr. Felker opined that Hall had no impairment in her ability to understand and follow one and two-step instructions.  Tr. 285.  Dr. Felker opined that Hall's ability to concentrate, particularly on sustained tasks, and her ability to relate to others and deal with the general public were mildly impaired.  Tr. 285.  Dr. Felker opined that Hall's ability to relate to work peers and supervisors, and to tolerate the stressors of employment were

---

[9] Dr. Felker noted that Hall's substance abuse had been stable and in remission for about 1½ years.  Tr. 285.

moderately impaired. Tr. 285. Dr. Felker assessed Hall with a GAF of 56 for symptom severity and a functional GAF of 58 to 59.[10] Tr. 286.

C.  **Testimonial Evidence**

1.  **Hall's Testimony**

Hall was represented by counsel and testified at the administrative hearing. Tr. 26-27, 28, 29-45. Hall testified that she is unable to work full-time because the pain in her back, ankle and knees prevents her from standing for long periods.[11] Tr. 33. She indicated that she can stand for about an hour at a time and, as long as she is not in a tight spot, she can sit for about four hours at a time. Tr. 40. She stays in bed a lot throughout the day because it relaxes her and eases her pain. Tr. 40-41. She always has pain in her back and ankles; the pain in her knees comes and goes. Tr. 33-34. Her pain does not interfere with her concentration. Tr. 42. Her doctor has prescribed a prescription medicine, Neurontin, which eases but does not take away her pain. Tr. 34. The medicine makes her sleepy so she can rest at night. Tr. 34. She also takes Motrin and Tylenol but neither takes the pain away completely. Tr. 34.

Hall testified that her depression also prevents her from working. Tr. 34. Her doctor has prescribed two different medications for her depression. Tr. 35-36. While the medication has helped some, it does not help her all the time. Tr. 35. About twice each week, Hall cannot get out of bed because of her depression. Tr. 42-43.

---

[10] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses. *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 34. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

[11] Hall reported that, in 2003, she was in a motor vehicle accident wherein she hurt her neck and back. Tr. 312. In 2006, when Hall was running to catch a bus, she fell and twisted her ankle, which is when her ankle and knee pain started. Tr. 44-45.

Hall indicated that she sees a neurologist for her headaches.  Tr. 38.   Her headaches occur every two or three days but she had them pretty frequently in the past.  Tr.  Tr. 38-39, 43-44.  She takes medication for her headaches but, even with medication, her headaches last half the day.  Tr. 38-39, 44.  Sometimes, when she gets a headache, she cannot see things for a minute.  Tr. 39.

During the day, Hall sometimes visits with her children and grandchildren.  Tr. 36.  Her grandchildren make her feel a little better.  Tr. 36.  She either goes to their home or they visit her at her home.  Tr. 36.  Hall prepares meals for herself.  Tr. 36.   Although it takes her time and she needs to rest in between chores, she takes care of basic chores in her home.  Tr. 36-37.  Hall has a driver's license but she does not have a car.  Tr. 37.  Therefore, she depends on other people for rides to places like the grocery store, church and other activities.[12]  Tr. 37-38.  She watches television throughout the day and is able to pay attention to and understand the programs.  Tr. 43.

### 2. Vocational Expert's Testimony

Vocational Expert Barbara Burke ("VE") testified at the hearing.  Tr. 45-50.   The VE indicated that Hall's past work as a nurse's assistant was customarily a medium, semi-skilled position.  Tr. 46-47. However, the VE indicated that Hall performed her nurse's assistant work at the very heavy exertional level.  Tr. 46-47.  The VE also indicated that Hall's past work as a daycare worker was generally a light position, which Hall performed at a medium, semi-skilled position.  Tr. 47.

The ALJ asked the VE to assume a hypothetical individual of the same age, education and employment background as Hall who could perform light work with occasional climbing of ramps and stairs; no climbing of ladders, ropes, and scaffolds; simple work defined as unskilled

---

[12] On occasion, Hall walks up the street to the store but it is very painful for her to do so.  Tr. 37.

work with an SVP of one or two;[13] and superficial contact with coworkers and the general public. Tr. 47. The VE indicated that, because of the weight and mental limitations, such a hypothetical worker would be unable to perform Hall's past relevant work. Tr. 47-48. However, the VE testified that other work would be available to the hypothetical worker,[14] including fast-food worker – a light, unskilled position with approximately 5,000 jobs available regionally and over 2,700,000 jobs available nationally; coffee shop counter attendant – a light, unskilled position with approximately 1,300 jobs available regionally and over 200,000 jobs available nationally; and housekeeping cleaner – a light, unskilled position with over 3,000 jobs available regionally and over 300,000 jobs available nationally. Tr. 48-49.

As a second hypothetical,[15] the ALJ asked the VE to assume a hypothetical individual who could perform light work in terms of standing, walking, and bending abilities and ability to lift up to 20 pounds but the individual would be reduced from full-time work to only four to six hours each day. Tr. 50. In response, the VE indicated that there would be no work available to a hypothetical individual with those restrictions. Tr. 50.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which

---

[13] SVP refers to the DOT's listing of a specific vocational preparation (SVP) time for each described occupation. Social Security Ruling No. 00-4p, 2000 SSR LEXIS 8, *7-8 (Social Sec. Admin. December 4, 2000). Using the skill level definitions in 20 CFR §§ 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2. *Id.*

[14] The VE stated that she interpreted "superficial interaction with coworkers and the general public" to mean "no confrontation, arbitration, [or] negotiation." Tr. 48.

[15] The ALJ's second hypothetical was based on an opinion from Dr. Brown, Hall's treating physician since approximately 2006. Tr. 49-50.

8

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[16] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of

---

[16] The DIB and SSI regulations cited herein are generally identical. Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20

proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In the September 24, 2010, decision, the ALJ made the following findings:

1. Hall was insured through December 31, 2010. Tr. 12.

2. Hall has not engaged in substantial gainful activity since April 1, 2006, the alleged onset date. Tr. 12.

3. Hall has the following severe impairments: mild chondromalacia in both knees; mild degenerative changes in the lumbar spine with low back pain; history of an ankle chip fracture distal to the medial malleolus; history of headaches with benign intracranial hypertension/empty sella, normal pressure hydrocephalus; history of anemia; chronic pain disorder; and major depression. Tr. 12-13.

4. Hall does not have an impairment or combination of impairments that meets or medically equals one of the Listed impairments.[17] Tr. 13-15.

5. Hall has the residual functional capacity ("RFC") to perform light work except she can only perform occasional climbing of ramps or stairs, and no climbing of ladders, ropes, or scaffolds. The claimant can also perform simple work defined as unskilled work with a Specific Vocational Preparation (SVP) of one or two; and, she can have only superficial contact with co-workers and the general public. Tr. 15-17.

6. Hall is unable to perform any past relevant work. Tr. 17.

7. Hall was born on November 26, 1962, and was a younger individual age 18-49, on the alleged disability date. Tr. 17.

---

C.F.R. § 404.1501 et seq. The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

[17] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525.

8. Hall has a limited education and is able to communicate in English. Tr. 17.

9. Transferability of job skills is not an issue because Hall's past relevant work is unskilled. Tr. 18.

10. Considering Hall's age, education, work experience and RFC, there are jobs that exist in significant numbers in the economy that Hall can perform, including fast-food worker, coffee shop counter attendant, and housekeeping cleaner. Tr. 18.

Based on the foregoing, the ALJ determined that Hall had not been under a disability from April 1, 2006, through the date of the decision. Tr. 19.

### V. Parties' Arguments

#### A. Plaintiff's Arguments

Plaintiff presents two arguments in support of her request for reversal and remand. Doc. 14. First, she argues that the ALJ failed to provide good reasons for not giving controlling weight to her treating physician Dr. Brown's opinion. Doc. 14, pp. 12-15.

Second, she argues that the ALJ's RFC is not supported by substantial evidence because, even though the ALJ gave significant weight to state agency reviewing psychiatrist Dr. Orosz's opinion, the ALJ did not incorporate all of the limitations contained in that opinion. Doc. 14, pp. 15-17. Hall asserts that the RFC does not account for Dr. Orosz's finding that Hall has moderate limitations in her ability to perform at a consistent pace without interruption from psychologically based symptoms and does not account for Dr. Orosz's finding that Hall has moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors. Doc. 14, p. 16.

#### B. Defendant's Arguments

In response, the Commissioner argues that whether or not a claimant is disabled is an issued reserved to the ALJ, not a medical source, and the ALJ properly weighed the opinion

11

evidence and provided sufficient reasons for not providing controlling weight to Dr. Brown's opinion. Doc. 15, pp. 14-17.

The Commissioner also argues that the ALJ reasonably accounted for all of Hall's credibly established mental limitations, including Dr. Orosz's conclusions contained in the "Functional Capacity Assessment" portion of his opinion. Doc. 15, p. 17. The Commissioner further asserts that the ALJ's RFC assessment and hypothetical to the VE were consistent with Dr. Orosz's opinion, Dr. Felker's opinion, and Plaintiff's testimony regarding her daily activities and mental limitations. Doc. 15, pp. 18-19.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.      The ALJ's Step Five decision is not supported by substantial evidence.**

Hall argues that the ALJ's RFC is not supported by substantial evidence because, even though the ALJ gave significant weight to state agency reviewing psychiatrist Dr. Orosz's opinion, the ALJ did not incorporate all of the limitations contained in that opinion. Doc. 14, pp. 15-17. In support of her argument, Hall asserts that the RFC does not account for Dr. Orosz's

finding that Hall has moderate limitations in her ability to perform at a consistent pace without interruption from psychologically based symptoms and does not account for Dr. Orosz's finding that Hall has moderate limitations in her ability to accept instructions and respond appropriately to criticism from supervisors.  Doc. 14, p. 16.

The Commissioner asserts that the limitations that Hall argues were not accounted for in the RFC were contained in the "Summary Conclusions" section of Dr. Orosz's Mental RFC, not in the "Functional Capacity Assessment" section.  Doc. 15, p. 17.  In the "Functional Capacity Assessment" portion, Dr. Orosz concluded that Hall was "capable of performing simple one and two step tasks where close interaction with coworkers is not required." Tr. 303.  Thus, because the ALJ limited Hall to "simple work defined as unskilled work with a Specific Vocational Preparation (SVP) of one or two; and . . . only superficial contact with co-workers and the general public," the Commissioner argues that the ALJ did account for Dr. Orosz's limitations and the RFC is supported by substantial evidence.  Doc. 15, p. 17.  The Commissioner also argues that this case is distinguishable from *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504 (6th Cir. 2010).  Doc. 15, pp. 17-18, n. 8.  Further, the Commissioner asserts that the ALJ's RFC assessment and hypothetical to the VE were consistent with Dr. Orosz's opinion, Dr. Felker's opinion, and Plaintiff's testimony regarding her daily activities and mental limitations.  Doc. 15, pp. 18-19.

To satisfy his burden at Step Five, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  "Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question." *Id.* (citation omitted).  However, if an ALJ relies on a VE's

13

testimony in response to a hypothetical, in order for the VE's testimony to constitute substantial evidence, that hypothetical must accurately portray the claimant's limitations. *Id.; Ealy*, 594 F.3d at 516-17; *see also Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (explaining that, although an ALJ need not list a claimant's medical conditions, the hypothetical should provide the VE with the ALJ's assessment of what the claimant "can and cannot do").

Under the Sixth Circuit's *Ealy* decision, an omission of speed and pace-based restrictions from a hypothetical question is reversible error and restrictions to "simple" or "low stress" work do not sufficiently incorporate a claimant's moderate limitations in concentration, persistence and pace. *Ealy*, 594 F.3d at 516–17. In *Ealy*, the ALJ found that the claimant had moderate difficulties in concentration, persistence and pace but the ALJ did not ask the vocational expert a hypothetical containing a fair summary of those restrictions. *Id*. at 516. Instead, the ALJ's hypothetical only limited the claimant to simple, repetitive tasks and instructions. *Id*. The Sixth Circuit concluded that the hypothetical did not adequately describe the claimant's limitations and, as a result, the vocational expert's testimony did not constitute substantial evidence in support of the ALJ's Step Five determination. *Id.*

Here, in his Step Three analysis, the ALJ himself concluded that Hall had "moderate difficulties" with regard to concentration, persistence or pace. Tr. 14. This determination was reaffirmed later in the ALJ's RFC analysis when the ALJ discussed and accepted Dr. Orosz's opinion that Hall had moderate limitations in certain categories of "sustained concentration and persistence." Tr. 17. Although Dr. Orosz's "Functional Capacity Assessment" may be less limiting than his "Summary Conclusions," the ALJ, in his RFC analysis, specifically relied upon Dr. Orosz's "Summary Conclusions," not his "Functional Capacity Assessment." Tr. 17. The ALJ stated:

14

> As a result of his findings, Dr. Orosz concluded that claimant was only moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform at a consistent pace without interruptions from psychologically-based symptoms, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and not significantly limited in the remainder of the mental activities evaluated. *The functional capacity articulated above reflects these moderate limitations and is consistent with the claimant's demonstrated functionality.*

Tr. 17.  Thus, since the ALJ did not specifically cite or rely upon the "Functional Capacity Assessment" section of Dr. Orosz's opinion wherein he opined that Hall would be "capable of performing one and two step tasks where close interaction with coworkers is not required" (Tr. 303), the Commissioner's reliance on the "Functional Capacity Assessment" section to argue that the ALJ's RFC is supported by substantial evidence is unpersuasive.

Without further analysis by the ALJ, it is unclear how the ALJ's RFC, which limits Hall to "simple work defined as unskilled work with a  Specific Vocational Preparation (SVP) of one or two; and, she can have only superficial contact with co-workers and the general public," accounted for the ALJ's own findings of moderate limitations in concentration, persistence or pace and/or Dr. Orosz's opinion that Hall was moderately limited in her ability to perform at a consistent pace without interruption from psychologically based symptoms and moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors.[18]

For example, there are no limitations for speed or pace-based restrictions.  Without an explanation from the ALJ as to why he did not find it necessary to include a speed or pace-based

---

[18] Plaintiff argues that the ALJ did not account for these two moderate limitations.  Plaintiff concedes that the ALJ arguably accounted for Dr. Orosz's findings of moderate limitations in ability to understand, remember and carry out detailed instructions and to get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  Doc. 14, p. 16.  Plaintiff does not specifically discuss Dr. Orosz's finding of moderate limitations in ability to maintain attention and concentration for extended periods.  Tr. 17, 301.

limitation even though he gave great weight to Dr. Orosz's finding that Hall had moderate limitations in her ability to perform *at a consistent pac*e without interruption from psychologically based symptoms, the Court is left to speculate.[19] Tr. 17; 302. Moreover, limiting Hall to simple work does not necessarily account for moderate difficulties in concentration, persistence or pace. See also *Renn v. Comm'r of Soc. Sec.,* 2010 WL 3365944, at *6 (S.D. Ohio Aug. 24, 2010) (holding that, pursuant to *Ealy,* an RFC limiting the plaintiff to simple, routine repetitive tasks, occasional interaction with public, and only routine changes in work setting, did not properly account for the plaintiff's moderate deficits in memory, attention, and concentration); *Whack v. Astrue*, 2008 WL 509210 at *8 (E.D. Pa. Feb. 26, 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where claimant has moderate deficiencies in concentration, persistence or pace).

Further, although the Commissioner points to Dr. Felker's consultative examining opinion as support for the ALJ's decision, the ALJ did not rely on Dr. Felker's opinion in his RFC analysis.[20] Rather, the ALJ stated that his RFC assessment is supported by "opinions of Drs. Waldbaum, Bolz, Collins, Green, and Orosz."[21] Tr. 17. Thus, to the extent that the Commissioner argues that the ALJ's decision is supported by substantial evidence because it is consistent with Dr. Felker's opinion, the Commissioner's argument is *post hoc rationalization* and unpersuasive. See *Berryhill v. Shalala*, 4 F.3d 993, *6-8 (6th Cir. 1993) (unpublished)

---

[19] Additionally, while the ALJ accounted for limitations in dealing with co-workers and the general public, the ALJ's decision does not clearly address how the ALJ accounted for Dr. Orosz's opinion that Hall was moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors.

[20] As part of his Step Two analysis, the ALJ did mention Dr. Felker's consultative examination and her diagnosis of Chronic Pain Disorder, associated with psych factors. Tr. 12-13.

[21] The ALJ also notes that the RFC is supported by the record as a whole, medical evidence of record and deficiencies in Hall's credibility. Tr. 17.

(setting forth the requirement that an agency decision is to be reviewed based on the reasons set forth by the agency yet acknowledging that *post hoc rationalization* may in certain instances be harmless error); *cf. Poe v. Commissioner of Soc. Sec.*, 342 Fed. Appx. 149, 159 (6th Cir. 2009) (where an ALJ's decision is clearly supported by substantial evidence, the court need not address alleged errors pertaining to *post hoc rationalization*).

For the foregoing reasons, the RFC cannot be said to adequately incorporate moderate limitations in Hall's ability to maintain concentration, persistence or pace that the ALJ found to be supported by the record and opinion evidence. Thus, since the VE hypothetical upon which the ALJ relied included only those limitations contained in the RFC (Tr. 47), the VE's testimony does not constitute substantial evidence to support the ALJ's decision. Accordingly, even though Hall ultimately may not be found to be disabled, reversal and remand is warranted for further proceedings consistent with this opinion, including further evaluation of and/or explanation of Hall's RFC.

**B.     Other issue**

Since further proceedings consistent with this opinion may impact the ALJ's findings with respect to Hall's RFC, as well as his findings under the remaining steps of the sequential analysis, the Court declines to address Plaintiff's treating physician argument. *See Trent v. Astrue*, 2011 WL 841538, * 7 (N.D. Ohio Mar. 8, 2011) (declining to address the plaintiff's remaining assertion of error because remand was already required and, on remand, subsequent steps in the sequential evaluation process might be impacted).

## VII. Conclusion

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further proceedings consistent with this opinion.

Dated: August 26, 2013

Kathleen B. Burke
United States Magistrate Judge